PENDLETON, President,
delivered the resolution of the Court.
This is an appeal from the District Court of Dumfries, where the appellees brought an ejectment against the appellant for a lot and half an acre of land in the town of Alexandria, in which there was a special verdict, stating, that the trustees of that town, being seised of the lot in question, by deed dated the 30th May, 1765, conveyed it to James M’Leod, who died seised in 1770, leaving Robert M' Lead his son and heir. That James the father, in his life-time, made a verbal sale of the lot to Joseph Watson, who entered and was in possession thereof; and September 14th, 1770, gave a bond to Edward R-igdon, in the penalty of 100/., conditioned for making a good right to the lot, and defending it against all persons whatsoever. That Rigdon by his will dated April 22d, 1762, devised the lot as part of his residuary estate, to his wife Elizabeth, in fee. That Elizabeth, on the 28th of February1775, in consideration of 15/. assigned the bond and her right to the lot, to Richard Arrc.lt, who in 1776 entered into possession of the lot, enclosed if, and quietly held it till his death, and for the greatest part of the. time, occupied it as a grass lot. That on the 24th of December, 1783, Robert M’Leod of Frederick county, in Maryland, by feoffment, in consideration of 170/. specie, conveyed the lot to James Kirk of Alexandria, in fee with a general warranty, on which deed there is a memorandum, that on the same day peaceable possession of the lot was given by M’Leod to Kirk, in presence of the subscribing witnesses; also, a receipt for the consideration money; and, there is a certificate of the Clerk of the Corporation Court of Alexandria, that this deed, memorandum, and receipt, were proved by the witness and ordered to be re corded, on the 23d September, 1784, more than eight monlhs, but less than two years from the date of the deed, which the jury find was executed in Alexandria, where *322 the witnesses also resided. On the same 24th of December 1783, James Kirk entered, into a bond to Robert M’Leod, in the penalty of 250/. reciting the conveyance him, but that the lot is yet in possession of Richard Jlrrell and others, who dispute the title, and the condition is, that Kirk shall pay 130/. without interest after his being put into possession of the lot, and an undeniable title in fee made, which bond M’Leod on the 19th of March, 1787, for 112/. 8s. 6d. assigned to Richard Jlrrell. They find that Robert at the time of his conveyance to Kirk, was out of possession, and that Kirk knew at the time, that Jlrrell was in possession, and would dispute the title. That Robert M’Leod by bargain and sale, dated the 15th of September, 1784, and duly recorded, conveyed the lot to Richard Jlrrell in fee, with a general warranty. That Richard Jlrrell at the time, had notice of M’Leod’s deed to Kirk. On the same day, Jlrrell executed a bond to M'Leod, in the penalty of 600/. reciting that conveyance, and the former one to Kirk; and the condition is, that, if Kirk recovered the lot, the bond was to be void; and if Kirk failed, and Jlrrell’s title was established, and Jlrrell should in that case, pay 300/. to M’Leod, by three several instalments, the bond was also to be void. That Richard Jlrrell died intestate in possession of the lot, in 1795, and that the plaintiffs are his heirs; how or when they lost the possession, so as to become plaintiffs, is not stated. The equitable title supposed to be derived from the verbal sale of James M’Leod the father, to Watson, may be placed out of the question: since it has no effect upon the legal title; and, if the plaintiffs go into a Court of Equity, circumstances may be opposed of weight, sufficient to prevent relief: As may also the dispute, whether Robert’s deed to Kirk was recorded within time; since the act only declares a conveyance, not recorded, to be void as to subsequent purchasers without notice, and Jlrrell is found to, have had notice: And we come to the question on the legal title. From, this special verdict, it appears that both parties claim under Robert M’Leod; the defendants by a prior deed in December, 1783, and the plaintiffs by a subsequent deed in September 1784; and the prior deed must prevail, unless its operation is prevented by the adverse possession at the time of making it; as to which fact, the special verdict is uncertain, if not contradictory, for it states, that Jlrrell in 1776, entered into possession of the lot, and quietly held it till his death in 1795, and that Ro~ *323 bert, at the time of his conveyance to Kirie, was out of possession; which might bo true, and yet it might also be true, that Robert, after the conveyance, might peaceably enter into the lot, so as to make livery of seisin, if no person, claiming under Mrrell, was then upon the lot; of which the memorandum endorsed on the deed and proved by the witnesses, is a very strong evidence, and which is rendered probable also, by the nature of ,/lrre.IPs occupation as stated, since he occupied it as a grass lot; but still, however strong, this is only evidence; and the fact, whether there was an actual and peaceable entry, so as to make the livery effectual, ought to have been decided by the jury; especially as they state an adverse possession, with notice. The Court is therefore of opinion, that they cannot proceed to judgment upon this verdict, it being uncertain, if not contradictory, as to the material facts of Pirre. IPs continual possession from 1776 to 1795, and Robert JM’ hood’s peaceable entry to make livery to Kirk in 1783. The judgment is therefore reversed with costs, and a new trial awarded.